On the Merits.
Spencer, J.
The controversy in this case is limited to the ownership of the ninety-five bales of cotton, shipped by Ernest Heyner, from Yaucluse Landing, in Arkansas, per steamer Pargoud, to John Chaffe & Sons, “ for account of Frank & Go.”
The facts are as follows: Heyner was a planter in Arkansas. He was indebted to Frank & Co. of Memphis in a sum of $4,629 46, evidenced by two notes. On the 29th March, 1876, in order to secure them the amount of said indebtedness, at dates specified, he executed in the usual form (a conditional sale) a common law chattel mortgage, “ all of his interest of every kind and nature whatsoever in the crop of cotton which may be raised during the present year, 1876, on the Heyner place in Chicot county, and also thirteen mules and five wagons now on said plantation, and all the farming implements,” etc. “And I do further agree that, as fast' as the cotton * * * is prepared for market, I will ship the same to a responsible factor in the city of New Orleans (to be selected by me) in my name, for the account of the said Frank & Co., and that the proceeds arising from the sales of said cotton * * * shall be applied first to the payment of any open account or unsecured indebtedness which they may hold against me, and next to the payment of the indebtedness herein secured according to the maturity thereof.”
It seems that during the year 1876 Frank & Co. made further advances to Heyner, swelling their total debt to about $6500. Heyner, also, during said year obtained advances and supplies from Chaffe & Sons to amount of six or seven thousand dollars, giving them a lien on his crops. »
On 11th February, 1877, Heyner shipped, per Pargoud, to Chaffe & Co., two lots of cotton, embraced in one bill of lading, as follows:
Ninety-five bales, marked “Heyner,” for account of Frank & Co.; seventy-six bales, marked “ Heyner,” for account of shipper.
The Pargoud reached New Orleans about six o’clock in the morning, and the bill of lading was. delivered to Chaffe & Sons between eight and ten o’clock same day. About twelve or one o’clock same day Chaffe & Sons notified the boat that they would not accept the consignment of the ninety-five bales shipped by Heyner for account of Frank & Co. In the meantime, however, most of the cotton had been hauled away to the press, where Chaffe & Sons stored their cotton, by *597 employees of the press. It is shown, however, that this was not done by the direction or consent of Chaffe & Sons. On the same day, February 15,1877, Chaffe & Sons brought this suit and attached the ninety-five bales of cotton, as the property of Heyner, to pay the balance due them on account.
Frank & Co. intervened, and allege “ that they are the owners” of the said cotton attached by Chaffe. “ That they became the owners of said cotton in the manner following, to wit: That Ernest Heyner, defendant herein, who resides in Chicot county, Arkansas, being indebted to your intervenors in the sum of §6500, * * * on the 8th February, 1877, in further satisfaction of said indebtedness, gave in payment to your intervenors ninety-five bales of said cotton, at Yaucluse Landing, Arkansas, the same being then and there accepted by your intervenors through said Jacob Frank, a member of the intervenors’ firm; that after the acceptance of said cotton as aforesaid, * * * the ninety-five bales of said cotton were shipped by Ernest Heyner from Yaucluse to said Chaffe & Sons, and the bills of lading * * * were made for account of Frank & Co.”
They further allege that on arrival at New Orleans the cotton was duly received by Chaffe & Sons and sent to the press ; that by accepting said bill of lading the said Chaffe & Sons accepted it with the conditions therein expressed, to wit, that said cotton belonged to intervenors, and was their property, and to be held subject to their order by said Chaffe & Sons, and as trustees for intervenors. They pray to be decreed owners of the cotton, and that the same be held not liable to attachment by Heyner’s creditors.
The answers are general denials. There was judgment for plaintiff against defendant for §3420 14, with legal interest from judicial demand, viz, 16th February, 1877, with privilege on the property attached, and rejecting the demands of intervenors. Defendant and intervenors appeal.
As between Chaffe and Heyner the account is fully proved, but we find charges therein to amount of §110 49 as commissions “for advancing” money, in addition to eight per cent interest. This amount cannot, under the general issue, be recovered, and must be deducted from the balance decreed to be due, thereby reducing it to §3309 65.
There is no plea made by defendant, or even suggestion in argument, that plaintiff forfeited all interests by taking a written contract lor more than eight per cent, and that question need not therefore be discussed. The only objection is to the excess of interest over five per cent. The conclusion we have reached makes defendant’s debt to plaintiff §3,309 65, instead of §3318 96, as conceded by defendant’s counsel in his brief.
*598 So far as Frank & Co. are concerned, they are plaintiffs by intervention. They allege themselves to be the owners of the ninety-five bales of cotton in controversy. It is incumbent on them to prove their ownership affirmatively. Both parties claiming under Heyner, his ownership originally of this cotton cannot be denied. Intervenors allege that they acquired said cotton from Heyner by a giving in payment on the 8th of February, 1877. That is their specific allegation, and we are at a loss to understand how their counsel say “ that the cotton was not claimed by them under the elation en paiement.” But we propose to examine their claim of ownership, in all its aspects as argued, and as prosecuted by the evidence offered. We propose to inquire—
First — What was the effect of the contract of mortgage given by Heyner to Frank & Co. on the crop of 1876, to be grown, and how far the courts of this State will enforce such a contract to the prejudice of its own citizens ?
• Second — Was there ever a valid and complete sale or dation en paiement of these ninety-five bales of cotton as against third persons?"
• Third — Did the shipment of the said cotton by and in the name of Heyner to Chaffe & Sons, for account of Frank & Co., vest the title in Frank & Co. when Chaffe & Sons refused the consignment?
. Fourth — Did Chaffe & Sons in fact accept the consignment? In relation to this last point, we may dispose of it in a few words. Chaffe Sr Sons, not only did not accept the consignment, but with great promptitude refused it and gave immediate notice thereof. This they had a perfect right to do, and the fact that they accepted the consignment of the seventy-six bale lot in no wise compelled them to accept the ninety-five bale lot shipped under different conditions. The two were entirely separate, and they had a right to treat them as separate shipments.
As to the contract of mortgage, it is contended with much earnestness that at common law the effect of a chattel mortgage, as this was, is to vest the legal title in the mortgagee, and that therefore Frank & Co. must be regarded as owners of the crop of 1876, from the date of the mortgage. The terms of that instrument are entirely inconsistent with such a proposition. As we have seen, the agreement was that Heyner should ship the cotton in his own name to a factor of his own choice in New Orleans, and “ that the proceeds arising from the sale" were to be applied to Frank & Co.’s debt. It never was intended by that act to make Frank & Co. the owners of the cotton, but simply to secure them its proceeds after Heyner had caused it to he sold in this State. Nor are we prepared to assent to the proposition that this contract is to be governed by the laws of Arkansas, even were those laws in evidence, which does not appear to be the case. There is no mention *599 whatever oí their introduction in the note of evidence, and the fact of the judge and counsel arguing about them, does not change the fact that they were not introduced.
This was not an executed but an executory contract, and it was to have its execution in the State of Louisiana. In Beirne vs, Patton, 17 La. 590, this court correctly announces that “ it is a well settled rule that where a contract is either expressly or tacitly to be performed in another place than that where it is made, its validity is to be governed by the law of the place of performance.” Story’s Conflict, p. 233; 2 Kent’s Com., pp. 393, 459. If we apply the law of Louisiana to this chattel mortgage, so far from its being good to vest title in the mortgagee, it is void, even as a security, unless the movables be actually delivered as a pledge.
But there is another and stronger reason why we cannot give effect to this mortgage or conditional sale. “ While we recognize the principle that all contracts in regard to personal property must be regulated by the lex loci of the domicile of the owner, we hold that as relates to the rights and remedies of creditors, personal property has a situs oi; locality; and is to be governed by the law of the country where it is situated when there arises a conflict between the latter law and the former. The principle of comity cannot require of us that we should enforce on property here, to the prejudice of our citizens, a contract void under our law. It would bo giving unjust advantage to foreign creditors over our own, in direct violation of our law. In relation to property within our jurisdiction, we cannot withheld from suitors their legal remedies, or suffer their rights to be controlled or their interests injured by acts of their debtors abroad, not assented to by them, and reprobated by our laws. This would be sacrificing justice to courtesy. 2. Mart. N. S. 93; Story’s Conflict, p. 203; 2 Kent’s Com., p. 461.” These are the views expressed by this court in Bierne vs. Patton, 17 La. 590. They have been maintained and reiterated in many other cases by this court, and have our entire approbation. See 14 An. 845; 3 An. 401; 7 A. 358; 8 N. S. 442; 12 A. 815; 18 L. 450. We therefore hold that the said mortgage did not make Frank & Co. owners of this cotton, so as to defeat the right, of attachment here by Heyner’s creditors.
Second — But it is said that there was a sale or dation en paiement of these ninety-five bales of cotton on the 8th of February, 1877, at Heyner’s gin, in Chicot county. It is stated in evidence by Frank and Heyner that on the 8th of February Frank went over to Heyner’s gin, and there Heyner exhibited to him the weights of the bales, and showed the cotton to him; that Frank thereupon engaged Heyner to boat the cotton across Lake Chicot, and haul it to Yaucluse Landing,- and there ship it by the Pargoud. They both swear that they considered this a *600 sale and transfer to Frank. It is manifest that it was no sale, no dation en paiement, even as between the parties.
First — Because, as we have seen, by the terms of the original contract, Frank & Co. ■ were simply to receive the proceeds of the cotton, which Heyner was to ship in'his own name, to a factor of Ms own selection in New Orleans.
Second — Because there was no price fixed or agreed upon for the cotton. Frank himself swears that “the proceeds of the cotton when sold were to be applied as a credit on said indebtedness.”
Third — Because there was no real or actual corporeal delivery, no putting of the thing within the power, control and possession of the transferee, which is indispensable to a dation en paiement of movables, even as between the parties, C. 0. 2656, and equally indispensable to a sale thereof, as against creditors and bona fide purchasers. C. C. 1922.
Interveners, if there had been an actual delivery, would have only been pledgees, since no price was agreed upon. But they are not before us in other character than as claimants of ownership. They must stand or fall with that pretension. We are satisfied that there was nothing done by the parties on the. 8th of February with the intention of changing or modifying the conditions of the original contract, and that there was no sale or giving in payment effected.
Third — The only remaining question for us to consider is, whether the fact of Heyner (the owner of the cotton) shipping it to Chaffe & Sons, for account of Frank & Co., where Chaffe & Sons refused the consignment, had the effect of transferring the ownership to Frank & Co. ? This act of Heyner must be interpreted with reference to the original agreement between him and Frank & Co. 1 We have seen that Heyner was to ship in his own name, to his own factor, and that the proceeds of the sale were to go to Frank & Co., as a payment on their claims against Heyner. Now a good,test of the question of ownership is to enquire on whom the loss would fall in case of destruction of the thing. lies perit domino. Had this cotton been lost in transitu, who would have borne it — Heyner or Frank & Co. ? By what process of reasoning would Heyner have put its loss on Frank & Co.? They would have said to him, by our contract you were to ship this cotton to New Orleans in your own name to your own merchant, and therefore at your own risk. It was the proceeds of the sale that we were to get, and you cannot pretend that we ever bought it of you; because by the laws of Louisiana, and in the nature of things, there can be no sale without a price. Now we never agreed upon any price. We told you to send your cotton to New Orleans, sell it and give us the proceeds. The most that can be made of such an agreement is that Heyner shipped his cotton to Chaffe with instructions in the bill of lading to pay the proceeds when sold to *601 Frank & Oo. This did not make Frank & Oo. owners oí the cotton, and its destruction in transitu would have been Heyner’s loss. Undoubtedly, had Chaffe & Sons accepted the consignment, they would have been bound to pay the proceeds to Frank & Oo., not because Frank & Co. were owners of the cotton, but because Chaffe & Sons had agreed to do so. They would have occupied very much the position of a person into whose hands a thing is given in pledge to be sold to secure and pay a debt due to another. Thus if A put a thing in the hands of B as a pledge, with power of sale, to secure a debt to 0, A’s creditors could not attach it to the prejudice of 0. But this does not make 0 the owner of the thing or put it at his risk. For if it did, then 0 would have right to all it brought by sale, however much it exceeded the debt due to him.
In this case before us, suppose Heyner’s shipment for account of Frank had been five hundred bales instead of ninety-five — far more than enough to pay Frank & Oo. their $6500 — and suppose even that Chaffe & Sons had accepted the consignment, would any court refuse to maintain an attachment of the cotton by Heyner’s creditors, subject of course to the payment of Frank’s debt by preference ? Surely not. And it is only in this sense, and with this limitation, that must be understood, we think, the case of Grove vs. Brien, 8 How. 438. If A consign goods to B, “ for the use oí C,” and B accept the consignment, to the extent of O’s interest, whatever it may'be, he could invoke B’s possession as his own, and would be protected to that extent as a quasi owner or pledgee, but no further. The.preéent case differs from that of Grove vs. Brien in this important particular, that here the consignee refused the consignment, and never had a possession under the bill of lading which Frank & Oo. could plead as a quasi possession of their own.
In the case of Wilson vs. Smith, 12 La. 375, Martin, J., as the organ of the court, it was held that where cotton was consigned to a factor to pay an ordinary debt due him by the consignor, the latter remained owner of the cotton, and that it was liable to attachment by his other creditors before delivery; and that in such ease the possession of the master of the vessel was that of the consignor. This doctrine has been modified by subsequent legislation, so far as it relates to a consignee who is a creditor of the consignor by advance on the consignment or otherwise. But we apprehend that where the relation of debtor and creditor does not exist, or where the consignee refuses the consignment, that the doctrine is still correct that the possession of the master is that of the consignor. We are satisfied that in this case neither the legal or actual possession of the cotton nor the ownership thereof was ever vested in Frank & Go., and as their claims rest entirely upon their ownership they were properly rejected by the court a qua.
*602 It is therefore ordered, adjudged, and decreed that the judgment appealed from, in so far as it rejects the demands of intervenors, be affirmed at their costs. That the judgment of John Chaffe & Sons against defendant Heyner be amended by reducing the amount thereof to the sum of $3309 65 ; and that in all other respects it be affirmed ; the costs of this appeal as to defendant to be paid by plaintiffs, and as to intervenors by intervenors.